# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE RIVERA, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-18-101 |
| WEXFORD HEALTH SOURCES, *et al.*, | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Plaintiff Jose Rivera filed this civil rights action, alleging that Defendants have been deliberately indifferent to his medical needs. ECF No. 1. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 13. Although advised of his right to do so, ECF No. 14, and granted three extensions of time, ECF Nos. 16, 18, 20, Plaintiff has not filed a response to Defendants' dispositive Motion or presented exceptional circumstances excusing such delay, and the time to do so has expired. The matter is now ripe for review. The Court finds a hearing unnecessary. *See* Loc. R. 105.6. For the reasons that follow, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is GRANTED.

## PENDING MOTION

On August 29, 2018, the Court received Plaintiff's fourth Motion for Extension of Time, in which Plaintiff asserts that he has been unable to access the facility library to conduct legal research. ECF No. 21. The Court had granted Plaintiff's three prior Motions for Extension of Time. ECF Nos. 16, 18, 20. In granting the second Motion, the Court informed Plaintiff that no further extensions would be granted. ECF No. 18. However, when Plaintiff protested that he had limited access to the library, the Court granted Plaintiff's third Motion for Extension of Time to respond, extending the time to respond to August 11, 2018, but cautioned Plaintiff that no

further extensions would be granted. ECF No. 20. Further, in explaining why resort to the library appeared unnecessary in this case, the Court explained that "a claim of insufficient medical care needs to be substantiated by evidence of the lack of care, not legal analysis." *Id.* In view of these warnings, the Court denies Plaintiff latest Motion for Extension of Time.

## BACKGROUND

A. Plaintiff's Complaint

On January 4, 2018, Plaintiff filed an unsworn Complaint alleging that "Defendants have provided inadequate medical treatment for a very painful knee injury, and then ignored the physician's order for physical therapy. I am in great pain and having difficulty walking. Defendants have ignored my sick call requests for the past 18 months." Compl. 2 (capitalization altered). Plaintiff's Complaint does not contain any other details; nor did he submit any additional filings on the merits.

B. Defendants' Exhibits

Defendants have submitted Plaintiff's certified medical records from May 2015 through his filing of his Complaint. Med. Recs., ECF No. 13-4. The records reflect that Plaintiff has degenerative joint disease ("DJD") in his right knee which has caused him to suffer pain in the past. Between May 2015 and October 2015, Plaintiff had three visits with prison medical staff regarding his knee pain, underwent an x-ray of his right knee, and was prescribed medication to alleviate pain. *Id.* at 2-9. In November 2015, Plaintiff's right knee and his right wrist (which Plaintiff does not mention in his Complaint[1]) were evaluated on site by an orthopedic specialist,

---

[1] In addition to problems with Plaintiff's right wrist, the medical records reference several other health problems. *See, e.g.*, Med. Recs. 22 (noting that Plaintiff suffers from chronic esophageal reflux, for which he receives Zyrtec); *id.* at 33 (noting that Plaintiff was suffering from sore throat at time of his chronic care visit, for which he was given throat lozenges). Because

who recommended that Plaintiff be referred to an outside orthopedic specialist for an arthroscopy. *Id.* at 11-13.

Following a chronic care visit and an attempted telemed consult in December 2015, Plaintiff was seen by Dr. Krishnaswamy of Bon Secours Baltimore Health System, who also recommended that Plaintiff undergo arthroscopic surgery. *Id.* at 14-18. Dr. Krishnaswamy performed the surgery on Plaintiff's right knee on March 10, 2016. *Id.* at 20. At Plaintiff's follow-up appointment, Dr. Krishnaswamy noted that Plaintiff reported "feeling a lot better," that the surgical wounds had healed well, and that Plaintiff had "a range of motion of 10-100 degrees with increasing strength." *Id.* Although the visit notes reflect that Dr. Krishnaswamy "advised [Plaintiff] to continue range of motion exercises," there is nothing in the notes to suggest that Dr. Krishnaswamy ordered Plaintiff to undergo physical therapy with a medical professional. *Id.*

On January 14, 2017, Plaintiff submitted a sick call complaining that he twisted his left knee, causing him to suffer pain and difficulties walking. *Id.* at 21. Healthcare personnel indicated that he did not appear for the January 22, 2017 appointment that had been scheduled in response to the sick call. *Id.*

On April 13, 2017, Plaintiff had a chronic care appointment with Dr. Yonas Sisay regarding his DJD. Dr. Sisay's notes from this appointment state "Pt reports doing well, wants Motrin PRN renewed. Pt says he is actively walking around the [facility] working. Pt reports tendinitis resolved. [C]ame walking without limp. Motrin renewed with Zantac." *Id.* at 22.

On July 13, 2017, Plaintiff had another chronic care appointment with Dr. Sisay regarding his DJD. In his notes from this visit, Dr. Sisay stated "Pt reports doing well, wants

---

Plaintiff's Complaint only concerns his treatment for knee pain, the Court limits its summary to those portions of the medical record relevant to knee pain.

3

Motrin PRN renewed. Pt says he is actively working & does 200 push up daily. Pt came walking without limp. Motrin renewed with Zantac." *Id.* at 24.

On September 28, 2017, Nurse Yetunde Rotimi performed a routine physical exam on Plaintiff. *Id.* at 26. According to Nurse Rotimi's notes, Plaintiff "denie[d] any acute comp[l]aints" and reported that his "right knee pain [was] controlled with meds" and that the knee "has swelling, moderately reduced ROM [range of motion]." *Id.* at 26-27, 29.

On October 12, 2017, Plaintiff had a chronic care appointment with Dr. Sisay regarding his DJD. Dr. Sisay's notes state "Pt reported he is doing well, wants med renewal. Pt says he feels great & is actively working. Pt came walking without limp. Motrin renewed with Zantac." *Id.* at 31.

On January 8, 2018—four days after Plaintiff mailed his Complaint—Plaintiff had a DJD chronic care appointment with Dr. Sisay, who noted "Pt reports his is doing well, wants med renewal. Pt states he gained weight & education given. Pt came walking without limp. Motrin renewed with Zantac." *Id.* at 33.

Defendants also submitted an affidavit from Dr. Sisay, in which he summarizes the above-detailed medical treatment before stating that Plaintiff "has continued and will continued to be regularly seen at chronic care clinic and have access to medical staff at all times via the sick call process," that Defendant Conn is not a medical provider and has never provided medical care to Plaintiff, and that, in Dr. Sisay's "medical opinion to a reasonable degree of medical probability Plaintiff received appropriate medical treatment for his right knee condition in accordance with the standards of medical care." Sisay Aff. 2-3, ECF No. 13-5.

**STANDARD OF REVIEW**

4

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, and Defendants submitted exhibits in support of their position. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on exhibits and an affidavit attached to their dispositive Motion, the Motion shall be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 US. 574, 585-87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Additionally, while this Court is required to liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

## ANALYSIS

### A. Supervisory Liability

It is well established that the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a

recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff names Wexford Health Sources Inc. ("Wexford") and Daniel Conn, President and CEO of Wexford as Defendants. However, he fails to allege that either Defendant knew or had constructive knowledge of his allegedly deficient medical care, must less that there was "an affirmative causal link" between Defendants failure to act and the alleged violation of Plaintiff's Eighth Amendment rights. Accordingly, Plaintiff's claim against Wexford and Conn must fail. *See id.*

## B. Deliberate Indifference

In any event, even if Plaintiff had alleged supervisory liability or named as defendants those individuals who were directly involved in and responsible for providing him with medical care,[2] his claim nonetheless would fail on the merits. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual

---

[2] Plaintiff does name "Unknown Wexford Health Sources, Inc. Employees" as Defendants (Compl. 1), but has provided no information that might aid in specifically identifying such unknown employees; nor have such Defendants been served.

punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[D]eliberate indifference requires more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 696 (internal quotation marks omitted).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component is satisfied only where a prison official "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True

8

subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

In this case, the medical records demonstrate that Plaintiff has received continuous treatment and evaluation for his DJD, including chronic care visits every three months. *See* Med. Recs. 22-34. At these chronic care appointments, Plaintiff informed providers that his DJD was doing great and requested continuation of the same treatment plan. Providers also noted external indications that Plaintiff's DJD was not causing pain or otherwise hindering Plaintiff, such as the fact that Plaintiff walked without a limp and was working and exercising frequently. *Id.*

As to Plaintiff's assertion that his sick calls are being ignored, the medical records indicate that medical staff only received one sick call from Plaintiff during the 18-month time period mentioned in the Complaint, and that Plaintiff failed to show up to the appointment that was scheduled in response to the sick call. *Id.* at 21. Further, even if Plaintiff submitted additional sick calls that Defendants have not presented to the Court, he fails to suggest deliberate indifference to his medical needs because he repeatedly informed his medical providers at his chronic care appointment that his knee was doing well. Indeed, as previously

9

noted, Plaintiff reported to Dr. Sisay that he was doing well and reported no pain at his chronic care visit a mere four days after mailing the instant Complaint. *Id.* at 33-34.

Turning to Plaintiff's assertion that he had not been provided physical therapy as ordered by his doctor, the medical records do not contain any orders for Plaintiff to attend physical therapy, and Plaintiff has not offered any evidence that he had a doctor's order for physical therapy. Although Dr. Krishnaswamy "advised [Plaintiff] to continue range of motion exercises" following his arthroscopic surgery, there is nothing to substantiate Plaintiff's unsworn assertion that he was denied physician-ordered physical therapy. *Id.* at 20. In any event, even if Plaintiff was ordered to get physical therapy, the lack of such therapy was not objectively serious as demonstrated by his reports at chronic care appointments that he was "doing well," was able to work, and walked without limping.

In sum, the conclusory assertions in Plaintiff's unsworn Complaint that he has not received medical care for his knee are belied by the certified medical records that Defendants have provided. These medical records demonstrate that Plaintiff continually received treatment. To the extent that Plaintiff had untreated treated pain, the Defendants would not have subjective knowledge of this condition given Plaintiff's repeated reports to medical providers that his knee was doing well.

## CONCLUSION

For the reasons stated above, Plaintiff's Fourth Motion for Extension of Time is denied, and Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is granted. A separate order follows.

9/19/18
Date

Paul W. Grimm
United States District Judge